UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__4/14/2025__
```

------------------------------------------------------------------X

RECOOP LLC,

                         Plaintiff,

            -v-

OUTLIERS INC. d/b/a THESIS
NOOTROPICS INC.,

                   Defendant.

-----------------------------------------------------------

OUTLIERS INC. d/b/a THESIS
NOOTROPICS INC. and DANIEL
FREED,
               Counterclaim and
            Third-party Plaintiffs.

            -v-

RECOOP LLC and ANASTASIA ALT,

               Counterclaim and
            Third-party Defendants.

------------------------------------------------------------------X

               24-cv-01810 (LJL)

         OPINION & ORDER

LEWIS J. LIMAN, United States District Judge:

      Defendant Outliers, Inc. d/b/a Thesis Nootropics Inc. ("Defendant" or "Thesis") moves,

pursuant to Federal Rules of Civil Procedure 56, for an order granting it summary judgment and

dismissing the complaint of Plaintiff Recoop LLC ("Plaintiff" or "Recoop"). Dkt. No. 96.

Defendant also seeks sanctions against Plaintiff under Federal Rule of Civil Procedure 11 and for

an award of attorneys' fees under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §

1836(b)(3)(D). Dkt. No. 102.

For the following reasons, the motion for summary judgment is granted. The Court retains the motion for attorneys' fees *sub judice*.

## BACKGROUND

The Court first describes the parties. It then describes Plaintiff's allegations as stated in Plaintiff's First Amended Complaint. Dkt. No. 19 ("FAC").[1] Next, the Court sets out the undisputed facts drawn from Thesis's Rule 56.1 statement, Dkt. No. 96-14 ("SUF"), the declaration of third-party plaintiff Daniel Freed ("Freed"), Dkt. No. 96-13, the forensic report prepared by forensic consultant Stroz Friedberg, Dkt. No. 96-4 (the "Friedberg Report"), and exchanges between Freed and third-party defendant Anastasia Alt ("Alt"), Dkt. No. 96-5.

## I.    The Parties

Recoop is a direct-to-consumer e-commerce company that sells vitamin supplements primarily directed at consumers who take prescription stimulants. SUF ¶ 8. It was founded on or about July 18, 2018, by Freed andAlt. *Id.* From the date of Recoop's founding until present, Alt has been its Chief Executive Officer and managing member. *Id.* ¶ 9. Freed was a member, officer, and employee of Recoop from the date of its founding. *Id.* ¶ 10. In his capacity as a member, officer, and employee of Recoop, Freed worked under the supervision and control of Alt. *Id.* ¶ 11. Alt terminated Freed's employment on February 28, 2020. *Id.*

Thesis is a direct-to-consumer ecommerce company that sells "nootropic" health supplements. SUF ¶ 12. It was co-founded by Freed on or about January 17, 2017. *Id.* Alt was a shareholder of Thesis and served as an advisor to Thesis from on or about June 15, 2018, to March 8, 2021. *Id.* ¶ 14. During that time, she was privy to Thesis's internal systems and marketing strategy. *Id.* Alt was aware that Freed was a co-founder, shareholder, officer, and

---

[1] Freed's role with Recoop is discussed in the SUF and is undisputed on this motion but is not specifically alleged in the FAC.

employee of Thesis and consented to his simultaneous work for both companies.  *Id.* ¶ 15.

During Freed's time as a member, officer, and employee of Recoop, he worked on developing Recoop's website, including installing a Google Tag, under the supervision and direction of Alt and along with third-party contractors hired by Recoop.  *Id.* ¶ 17; Dkt. No. 96-13 ¶ 17.  Recoop's marketing agency, Constellation, was one of the third-party contractors.  SUF ¶ 17.

## II.    Plaintiff's Allegations

Plaintiff alleges that between an unspecified month in 2019 and January 2020 at the latest, Thesis, through its CEO Freed, accessed Recoop's website backend without authorization. FAC ¶ 36.  According to Recoop, Thesis installed tracking tools—specifically, a Google Site Tag, a Google Analytics Pixel, and a Meta Facebook & Instagram Pixel—on Recoop's website without its knowledge or consent.  *Id.*  These tools allowed Thesis to monitor visitor behavior on Recoop's website, send individualized advertising communications to visitors, and track their subsequent shopping behavior.  *Id.* ¶¶ 24, 26.  Thesis allegedly employed these tools to intercept Recoop's private customer communications and proprietary datasets, which Recoop had developed through an $800,000 investment.  *Id.* ¶¶ 29, 37.  This proprietary information, including unique client IDs and shopping behavior, served as the foundation of Recoop's competitive data science strategy and marketing efforts.  *Id.* ¶ 28.

Recoop asserts that Thesis used the intercepted data to enhance its digital marketing and customer acquisition efforts at a fraction of the cost.  *Id.* ¶¶ 39, 40.  Recoop further claims that Thesis promoted its business growth to investors without disclosing its unauthorized use of Recoop's proprietary data.  *Id.* ¶¶ 41–44.  Recoop contends that it only discovered Thesis's actions in mid-2023, years after the alleged "wiretapping" began.  *Id.* ¶ 46.

The FAC describes Freed as Thesis's CEO, without referencing the employment, management, or ownership relationship between Freed and Recoop.  *Id.* ¶ 36.

## III.    Defendant's Undisputed Facts

The following facts are drawn from Thesis's SUF, the declaration of Freed, Dkt. No. 96-13, and the Friedberg Report, Dkt. No. 96-4.

Google Tag Manager ("GTM") is a free tag management system that allows website operators to create, organize, and implement custom snippets of web code, known as "tags" or "pixels,"[2] on their website or mobile app without modifying the site's underlying code.  Dkt. No. 96-13 ¶ 16; Dkt. No. 96-4 at 4 n.4, 10.  These tags help monitor user behavior, track conversions, and manage site analytics.  Dkt. No. 96-13 ¶ 16; Dkt. No. 96-4 at 10.  Additionally, GTM enables users to control how tags behave based on cookie consent decisions.  Dkt. No. 96-13 ¶ 16.

Google Analytics ("GA") is a web and mobile analytics service provided by Google that helps website operators track user behavior, traffic patterns, and site performance.  *Id.* ¶ 23; Dkt. No. 96-4 at 11.  GA collects data through tags that are triggered when a page loads.  Dkt. No. 96-13 ¶ 23; Dkt. No. 96-4 at 11.  These pixels track how users navigate a website, the time they spend on a page, and website interactions, providing insights into user engagement.  Dkt. No. 96-13 ¶ 23.  By default, GA does not capture personally identifiable information such as email addresses, phone numbers, or order details.  Dkt. No. 96-4 at 11.  However, it can track whether a user provided such information without storing the actual data.  *Id.*

---

[2]  The terms "tag" and "pixel" are often used interchangeably to describe custom pieces of web code designed to track website user behavior for analytics.  Dkt. No. 96-4 at 4 n. 4.  Google Analytics refers to its tracking code snippets as "tags," while Meta brands its tracking code snippets as "pixels."  *Id.*  GTM "introduces the concept of containers, which are collections of tags or pixels that can be deployed to a website though a single unified pixel or tag."  *Id.*

A Meta Pixel is a piece of tracking code that helps website owners analyze user interactions after engaging with a Facebook advertisement linked to their site.  Dkt. No. 96-13 ¶ 27.  Managed through a Meta account and configured via the Meta Business Service, it collects metadata on user activity to track conversions, optimize ad performance, and support remarketing efforts.  *Id.*; Dkt. No. 96-4 at 12.

Stroz Friedberg, LLC ("Stroz Friedberg") is an independent, reputable and qualified third-party digital forensic expert.  SUF ¶ 6.  By order dated August 2, 2024, the Court granted Defendant's motion to appoint Stroz Friedberg to conduct a forensic examination of Thesis's and Freed's electronic systems, websites, and relevant third-party service provider accounts to determine whether there was evidence supporting Plaintiff's allegations.  Dkt. No. 39.  Recoop provided sworn interrogatories stating that its claims involve information allegedly transmitted through marketing pixels associated with the following three account identification numbers: Google Tag account "GTM-MSJ7KHL," GA account "US-57833108-2," and Meta account "137054843107099."  Dkt. No. 96-14 ¶ 18.  Stroz Friedberg was tasked with identifying evidence of the following activities alleged by Plaintiff: (1) access by Freed or Thesis to Recoop's website before and after Freed's departure from Recoop in February 2020; (2) insertion of the above tracking technologies into Recoop's website code base; and (3) transmission of information collected via those technologies to Thesis or Freed, unauthorized access to such information, or use of Recoop's information by Thesis or Freed.  Dkt. No. 96-4 at 4–5.

According to Stroz Friedberg, Recoop could not track customer communications or sensitive information through its GTM, GA, or Meta Pixels.  Dkt. No. 96-4 at 17.  Stroz Friedberg also found no evidence of any collection or export of Recoop's customer information.

*Id.* at 17–18.  Of the tracking tools Plaintiff claims were installed without authorization—GTM, GA, and Meta Pixel—only the GTM identified by Plaintiff was found in Recoop's website code base.  Dkt. No. 96-4 at 8.  The GA and Meta accounts identified by Recoop did not appear in its website code or Meta Business Records.  *Id.* at 12, 13, 15; Dkt. No. 96-13 ¶¶ 24, 30.

GTM was set up by Recoop by a since-deleted user.  Dkt. No. 96-4 at 15.  Freed was granted access to the GTM by Constellation, Recoop's third-party marketing agency, in approximately 2019 while he was still employed at Recoop.  *Id.*; Dkt. No. 96-13 ¶ 19.  As Alt was aware, Freed was responsible for building Recoop's website, including managing pixels and tags and troubleshooting Google Tag installation.  Dkt. No. 96-14 ¶ 4(d); Dkt. No. 96-13 ¶¶ 14, 17, 46.  Alt was copied on emails between December 26, 2018, and January 4, 2019, in which Freed and another employee discussed that Freed was setting up a new Google Analytics account and integrating the Meta Pixel.  Dkt. No. 96-5 at ECF 2–5.  In addition, Alt messaged Freed in the Recoop Team Chat on December 27, 2018, saying, "Dan site looks amazing! Great work," *id.* at ECF 6, and later thanked him for providing updates on website development on January 7, 2019, *id.* at ECF 7.  Alt also directly supervised and instructed Freed to troubleshoot pixels and Google Tag installation.  Dkt. No. 96-13 ¶¶ 17, 46; Dkt. No. 96-14 ¶ 4(d).  A January 2020 video recording further shows Freed working with a Google support specialist to install a Google Tag on Recoop's website to comply with Google's advertising policies for pharmaceuticals.  Dkt. No. 96-4 at 14; Dkt. No. 96-13 ¶ 18.

Freed departed Recoop on February 28, 2020.  SUF ¶ 11.  Stroz Friedberg found no evidence that, after that date, he accessed or altered Recoop's GTM, GA, or Meta Pixel.  Dkt. No. 96-4 at 11–13.  According to Stroz Friedberg, Freed's last activity related to the GTM account occurred in June 2019, when he was still employed by Recoop.  *Id.* at 8–9.  In 2020, a

6

contractor of Recoop removed Freed's access to Recoop's GTM. *Id.* at 15. There is no evidence

that any data fields from Recoop's GTM, GA Pixel, or Meta Pixel were forwarded to, accessed

by, or otherwise transmitted to Thesis or Freed, nor was any data from these sources found in

Thesis's or Freed's personal accounts. Dkt. No. 96-14 ¶¶ 26–29. Stroz Friedberg found no

processes to export or forward data from Recoop's platforms to those controlled by Thesis or

Freed, nor any evidence of Freed accessing or making changes to Recoop's platforms following

his February 2020 departure. *Id.* ¶ 30. The examination also observed no collections or exports

of Recoop's customer information from the pixels at issue. *Id.*

## PROCEDURAL HISTORY

Plaintiff initiated this case by complaint filed on March 8, 2024, seeking both

compensatory and punitive damages with interest and an injunction, together with costs and

disbursements of the action. Dkt. No. 1. Plaintiff's complaint alleges violations by Thesis of (1)

the DTSA, 18 U.S.C. § 1836, *et seq.*, (2) the Wiretap Act, 18 U.S.C. § 2510, *et seq.*, and (3) the

California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code §§ 630-638, as well as common

law claims for (4) unfair competition and (5) unjust enrichment. *Id.* On May 24, 2024, Thesis

answered the complaint. Dkt. No. 13. Thesis also filed counterclaims, and Freed filed third-

party claims against Recoop and Alt. *Id.*

Plaintiff filed its First Amended Complaint ("FAC") against Thesis on June 28, 2024.

Dkt. No. 19. On July 3, 2024, Thesis filed an Amended Answer to the FAC and Counterclaims

against Recoop and Alt, and Freed filed amended third-party claims against Recoop and Alt.

Dkt. No. 23. The Court entered a Case Management Plan and Scheduling Order on July 15,

2024, providing for all discovery to be completed by December 27, 2024, and summary

judgment motions to be filed by January 10, 2024.  Dkt. No. 26.[3]

On August 2, 2024, the Court granted Thesis and Freed's motion letter motion for an expedited forensic examination by Stroz Friedberg on the question of whether Thesis has accessed and intercepted data from Recoop's website backend without authorization and for Recoop to share the costs of the examination.  Dkt. Nos. 39, 40.  On October 22, 2024, Stroz Friedberg jointly delivered the final forensic report to the parties, which was filed on the docket that same day.  Dkt. No. 68-1.

On October 30, 2024, the Court ordered a stay of all proceedings in this matter until November 8, 2024, in light of the application of counsel for Recoop and Alt to withdraw.  Dkt. No. 76.  On November 12, 2024, following a report by the parties that they were working toward but had not finalized a settlement, the Court continued the stay until November 15, 2024.  Dkt. No. 78.  On November 18, 2024, the Court granted the application of Thesis and Freed to stay all deadlines in the case until November 22, 2024.  Dkt. No. 86.

On December 3, 2024, after settlement discussions broke down, Thesis and Freed moved to lift the stay in order to proceed with a motion for summary judgment, a potential motion for Rule 11 sanctions, and a motion to compel Recoop to pay its share of Stroz Friedberg's fees, leaving all other proceedings stayed.  Dkt. No. 93.  On December 5, 2024, the Court granted the motion to lift the stay.  Dkt. No. 94.  That same day, the Court granted the motion of Plaintiff's counsel to withdraw.  *Id.*[4]

---

[3] On August 8, 2024, Recoop filed a motion to compel arbitration of the counterclaims and third-party claims.  Dkt. No. 41.

[4] On December 10, 2024, Thesis and Freed filed a motion to compel Recoop to comply with the Court's August 2, 2024, cost-sharing order.  Dkt. No. 95.  Pursuant to the cost-sharing order, Stroz Friedberg issued invoices to both Plaintiff and Defendant, splitting the costs equally for its work on the forensic examination.  *Id.* at 2.

On December 13, 2024, Thesis filed this motion for summary judgment along with the declaration of counsel, an affidavit of Freed, a Rule 56.1 statement, a supporting memorandum of law, and the Friedberg Report.  Dkt. No. 96.

On December 20, 2024, the Court so-ordered the letter of Thesis and Freed that Recoop would have 30 days from the date of counsel's withdrawal on January 6, 2025, to make an appearance, and that should counsel appear, Recoop's opposition to the motion for summary judgment would be due 14 days thereafter or January 20, 2025.  Dkt. No. 98.

On January 8, 2025, Thesis and Freed wrote to bring to the Court's attention that no counsel had appeared for Recoop and to request that the pending motions be considered unopposed.  Dkt. No. 100.  They also requested leave to file a motion for Rule 11 sanctions against Recoop and for an award of attorney's fees under the DTSA, 18 U.S.C. § 1836(b)(3)(D), for Recoop's allegedly bad-faith misappropriation claim.  *Id.*  Previously, on September 23, 2024, Thesis and Freed had sent Recoop a letter stating that they would seek sanctions unless Recoop withdrew the complaint or provided evidence supporting its allegations and explained the omission of Freed's involvement with Recoop.  Dkt. No. 102-1.  On January 10, 2025, the Court issued an order stating that it intended to proceed to consider the pending motions unopposed and granting leave to file a motion for sanctions.  Dkt. No. 101.  On January 17, 2025, Thesis moved for sanctions against Recoop.  Dkt. No. 102.[5]  No opposition has been timely filed.

---

[5] On March 10, 2025, counsel appeared for Recoop and Alt.  Dkt. No. 103.  The following day, counsel informed the Court that they intended to litigate the case aggressively and requested until Friday, March 14, 2025, "to review the file and consult with our clients," after which they would be prepared to enter a reasonable briefing schedule.  Dkt. No. 105.  On March 13, 2025, Defendant and Freed filed a letter asking the Court to decide the motion based on the existing record.  Dkt. No. 106.  No letter was filed on March 14, 2025.  That same day, the Court issued an order noting that the deadline for Plaintiff to respond to the motion for summary judgment

## LEGAL STANDARD

Under Federal Rules of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009). The party seeking summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). If the nonmoving party bears the ultimate burden of proof at trial, the movant may meet its burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact. *Gil-Cabrera v. City of New York*, 2023 WL 2601132, at *3 (S.D.N.Y. Mar. 22, 2023) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam)).

Local Civil Rule 56.1 sets forth specific requirements for how the facts relied upon by the moving party and disputed by the opposing party are to be presented. Any motion for summary judgment must be "accompanied by a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." L.R. 56.1(a).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence to raise a genuine issue of fact for trial in order to avoid summary

---

had passed and that it would decide the motion on the present record. Dkt. No. 107. The order also stated that Plaintiff could file any appropriate or permissible application or motion after the Court had ruled on the summary judgment motion. *Id.*

judgment." *Jaramillo v. Weyerhaeusert Co.*, 537 F.3d 140, 145 (2d Cir. 2008). "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically denied and controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." L.R. 56.1(c); *see T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.").

"Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then 'summary judgment must be denied *even if no opposing evidentiary matter is presented.*'" *Id.* at 244 (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)). Even when a court in this District deems a movant's Rule 56.1 Statement unopposed, the movant is not "absolve[d] . . . of the burden of showing that it is entitled to judgment as a matter of law." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001). This burden cannot be carried where the factual assertions contained in a Rule 56.1 statement either lack proper citations to the record or the cited portions of the record do not lend the necessary support. *Id.*

Before granting an unopposed motion for summary judgment, the district court "must examine the movant's statement of undisputed facts and the proffered record support and determine whether the movant is entitled to summary judgment." *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014). The court "may not rely solely on the statement of undisputed facts

contained in the moving party's Rule 56.1 statement," *Vt. Teddy Bear*, 373 F.3d at 244, but must ensure that each material fact is "supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed," *Jackson*, 766 F.3d at 194. The court may also rely on other evidence in the record, even if not specifically cited. *Id.*; Fed. R. Civ. P. 56(c)(3).

## DISCUSSION

Plaintiff brings five claims against Thesis based on Thesis's alleged unlawful access to or use of Recoop information. They each share a common element: that Thesis must have had unlawful access to or use of the information.

"A plaintiff claiming misappropriation of a trade secret must prove that (1) it possessed a trade secret, and (2) the trade secret was used by defendant in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 49 (2d Cir. 2019).[6]

Under the DTSA, "misappropriation" includes (1) "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means," or (2) "disclosure or use of a trade secret of another without express or implied consent" in specified circumstances. 18 U.S.C. § 1839(5). "Improper means" include "theft, bribery, misrepresentation, [and] breach or inducement of a breach of a duty to maintain secrecy," but exclude "reverse engineering, independent derivation, or any other lawful means of acquisition." 18 U.S.C. § 1839(6).

The Wiretap Act prohibits the intentional interception, disclosure, or use of wire, oral, or

---

[6] The plaintiff bears the burden of identifying a purported trade secret with sufficient specificity and proving that the trade secret was misappropriated. *Syntel Sterling Best Shores Mauritius Limited v. The TriZetto Group, Inc.*, 68 F.4th 792, 801–02 (2d Cir. 2023).

electronic communications unless exceptions apply.  *See Lonegan v. Hasty*, 436 F. Supp. 2d 419,

426 (E.D.N.Y. 2006); *see Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 446

(S.D.N.Y. 2019).  "[T]hree kinds of activities are subject to liability under [18 U.S.C. §]

2511(1)(a): (1) intercepting any wire, oral, or electronic communication, (2) endeavoring to

intercept any wire, oral, or electronic communication, and (3) procuring another person to

intercept or endeavor to intercept any wire, oral, or electronic communication."  *Lonegan*, 436 F.

Supp. at 427.[7]  "The analysis for a violation of CIPA is the same as that under the federal

Wiretap Act."  *Underhill v. Kornblum*, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017).

In New York, unfair competition "prohibits a defendant from using a plaintiff['s]

property right or commercial advantage . . . to compete unfairly against the plaintiff."  *ITC Ltd.*

*v. Punchgini, Inc.*, 880 N.E.2d 852, 859 (N.Y. 2007).[8]  To establish such a claim, "a plaintiff

---

[7] "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."  18 U.S.C. § 2510(4).  Courts have construed "intercept" narrowly "to require that the interception of an electronic communication be contemporaneous with the transmission of that communication." *Tantaros v. Fox News Network, LLC*, 2018 WL 2731268, at *7 (S.D.N.Y. May 18, 2018); *see Snyder v. Fantasy Interactive, Inc.*, 2012 WL 569185, at *2 (S.D.N.Y. Feb. 9, 2012) ("Courts addressing the meaning of 'intercept' narrowly define it to include only 'acquisitions of communication contemporaneous with transmission, not storage.'" (quoting *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 139 n.11 (E.D.N.Y. 2010))).  As defined by statute, a "wire communication" is "any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection."  18 U.S.C. § 2510(1).  An "oral communication" is "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation."  *Id.* § 2510(2).  An "electronic communication" is "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate or foreign commerce."  *Id.* § 2510(12).

[8] Neither party has specified which state's law governs the unfair competition and unjust enrichment claims, but Thesis cited New York law in its memorandum of law.  Dkt. No. 96-15 at 4 n.7, n.8.  The Court need not "embark on a choice-of-law analysis in the absence of an 'actual conflict' between the applicable rules of two relevant jurisdictions."  *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331 (2d Cir. 2005); *accord Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A.*, 769 F. Supp. 2d 322, 325 (S.D.N.Y. 2011) (Sullivan, J.).  It

must demonstrate that the defendant wrongfully diverted the plaintiff's business to itself."
*McKinnon Doxsee Agency, Inc. v. Gallina,* 132 N.Y.S.3d 144, 149 (2nd Dep't 2020) (citations
and internal quotation marks omitted); *accord Baldeo v. Majeed,* 55 N.Y.S.3d 340, 343 (2nd
Dep't 2017). "Unfair competition encompasses '[t]he principle that one may not misappropriate
the results of the skill, expenditures and labors of a competitor.'" *McKinnon,* 132 N.Y.S.3d at
149 (quoting *Electrolux Corp. v. Val–Worth, Inc.,* 161 N.E.2d 197, 203 (N.Y. 1959)).
Misappropriation-based unfair competition claims typically involve "the taking and use of the
plaintiff's property to compete against the plaintiffs own use of the same property." *ITC Ltd.*,
880 N.E.2d at 859 (citation omitted).

To plead an unjust enrichment claim, the plaintiff must show "that (1) the other party was
enriched, (2) at [the plaintiff's] expense, and (3) that 'it is against equity and good conscience to
permit [the other party] to retain what is sought to be recovered.'" *E.J. Brooks Co. v. Cambridge
Sec. Seals*, 105 N.E.3d 301, 312 (N.Y. 2018) (quoting *Mandarin Trading Ltd. v. Wildenstein*,
944 N.E.2d 1104, 1110 (N.Y. 2011)); *accord Columbia Mem'l Hosp. v. Hinds*, 192 N.E.3d 1128,
1137 (N.Y. 2022). "The essential inquiry in any action for unjust enrichment . . . is whether it is
against equity and good conscience to permit the defendant to retain what is sought to be
recovered." *Mandarin Trading*, 944 N.E.2d at 1110 (citation omitted).

Each of Plaintiff's claims is fatally flawed by the same evidence or lack thereof.

Plaintiff cannot prevail on a DTSA claim because there is no evidence that Defendant or

---

is the obligation of the party advocating a choice-of-law analysis to demonstrate an actual
conflict between New York and another jurisdiction's law. *See Park Place Ent. Corp. v.
Transcon. Ins. Co.*, 225 F. Supp. 2d 406, 408 (S.D.N.Y. 2002) ("If the party advocating a choice
of law analysis fails to demonstrate an actual conflict between New York and another state's
laws, no choice of law analysis need be undertaken."); *accord E. Materials Corp. v. Mitsubishi
Plastics Composites Am., Inc.*, 2017 WL 4162309, at *4 (E.D.N.Y. Sept. 19, 2017).

Freed improperly acquired, disclosed, or used Recoop's customer data.  There is no evidence that Defendant or Freed used any Recoop information in violation of an agreement or confidence or as a result of any improper means.  As an initial matter, GTMs, GAs, and Meta Pixels do not collect sensitive information or customer communications by default, and there is no evidence of any customized configurations that would have allowed Recoop to do so.  Dkt. No. 96-4 at 16–17.  There is no indication that any of Recoop's customer information was collected or exported. *Id.* at 18.  Freed (but not Thesis) obtained access to Recoop's GTM, but there is no evidence that such access was in breach of an agreement or duty or was improper.  The undisputed evidence is that he obtained such access, legitimately and with Alt's knowledge, through Constellation while employed at Recoop and responsible for its website development.  Dkt. No. 96-4 at 15, 16; Dkt. No. 96-13 ¶ 19.  This is supported by email exchanges between Freed and Karalyn Zamora between December 26, 2018, and January 4, 2019, in which Alt was copied, Dkt. No. 96-5 at ECF 2–5, and by Alt's text messages to Freed on December 27, 2019, and January 7, 2020, praising his work, *id.* at ECF 6–7.  Alt's message, "Dan site looks amazing! Great work," reflects approval and consent.  *Id.* at ECF 6.

Furthermore, Alt actively supervised and directed Freed's work on Recoop's pixels, tags, and Google Tag installation.  Dkt. No. 96-14 ¶ 4(d); Dkt. No. 96-13 ¶¶ 14, 17, 46.  Trello messages on December 20, 2019, and January 17, 2020, show Alt instructing Freed to consult with tech support regarding a new pixel and troubleshooting issues with Google.  Dkt. No. 96-5 at ECF 12–13.  In January 2020, Freed collaborated with a Google support specialist to install a Google Tag on Recoop's website for compliance with Google's advertising policies for pharmaceuticals.  Dkt. No. 96-4 at 14; Dkt. No. 96-13 ¶ 18.

As to the time after Freed's departure from Recoop, there is no evidence that Thesis or

Freed disclosed or used Recoop's customer data without authorization.  No data from Recoop's tracking tools were transmitted to any devices or services controlled by Thesis or Freed.  Dkt. No. 96-4 at 5–6, 11; *see* Dkt. No. 96-13 ¶¶ 21, 26, 31.  The last activity linked to Freed involving the specified GTM occurred in June 2019.  Dkt. No. 96-4 at 8–9.  After Freed left Recoop on February 28, 2020, there was no evidence that he accessed or altered Recoop's GTM, GA, or Meta Pixel.  *Id.* at 11–13.  Freed's access to Recoop's GTM was also revoked in 2020, the year of his departure.  *Id.* at 15.  In the absence of evidence that Thesis received or used any Recoop data, Plaintiff cannot pursue a DTSA claim against Defendant.

The same set of evidence dooms Plaintiff's remaining claims.  The Wiretap Act prohibits the intentional interception, disclosure, or use of wire, oral, or electronic communications unless exceptions apply.  *Lonegan*, 436 F. Supp. 2d at 426; *see Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 446 (S.D.N.Y. 2019).

There is no evidence of an actual interception of any of Recoop's wire, oral, or electronic communications, or even an attempt to intercept such communications.  There is no evidence that the information collected by GTM, GA, and Meta Pixel contains communications at all.  As stated above, GTM, GA, and Meta Pixel do not capture customer communications by default, and no evidence suggests that Recoop implemented any custom configurations to enable such data collection.  Dkt. No. 96-4 at 16–17.  Additionally, the Friedberg Report found no evidence that any communications were intercepted contemporaneously with transmission, nor evidence of processes that exported or transmitted data from Recoop's platforms to systems controlled by Thesis or Freed.  *Id.* at 17–18; *see, e.g., Snyder*, 2012 WL 569185, at *2 (dismissing Wiretap Act claim where the plaintiff pled "no facts suggesting that Defendants accessed their communications during transmission").

The undisputed evidence also is inconsistent with Plaintiff's unfair competition claim. Plaintiff contends that Defendant misappropriated its labor and expenditures by intercepting communications and improperly accessing customer data.  Dkt. No. 19 ¶ 92.  However, the Friedberg Report found no evidence that data was exported or transmitted from Recoop's platforms to systems controlled by Thesis or Freed.  Dkt. No. 96-4 at 5–6, 11.  Nor did it find any indication that GTM, GA, or Meta Pixel collected Recoop's customer data or communications.  *Id.* at 18.  Freed further affirmed in his declaration that he never accessed, used, or misappropriated Recoop's customer information.  Dkt. No. 96-13 ¶ 3.

Plaintiff's unjust enrichment claim also fails.  Plaintiff claims that by intercepting its trade secrets and confidential information, Defendant has been unjustly enriched to the detriment of Recoop's business.  Dkt. No. 19 ¶ 97–98.  This claim fails for the same reason as Plaintiff's other claims: there is no evidence that Thesis or Freed transmitted data from Recoop's GTM, GA, or Meta Pixel to any of their devices or services.  Dkt. No. 96-4 at 5–6, 11.  The record presents no evidence of any unconscionable behavior by Defendant.

## CONCLUSION

The motion for summary judgment is GRANTED.  The Court retains the motion for sanctions and an award of attorney's fees *sub judice*.

The Clerk of Court is respectfully directed to close Dkt. No. 96.

SO ORDERED.

Dated: April 14, 2025
   New York, New York
                                                    _____
                                                          LEWIS J. LIMAN
                                                     United States District Judge